Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

- *additional counsel on signature page* -

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HILINSKY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOWER SEMICONDUCTOR LTD., RUSSELL C. ELLWANGER, and OREN SHIRAZI,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff David Hilinsky ("Plaintiff"), individually and on behalf of all other

persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Tower Semiconductor Ltd., ("Tower Semiconductor" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the securities of Tower Semiconductor between April 30, 2012 and January 14, 2016 (the "Class Period"), inclusive, seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as Defendants conducts business in this district and a significant portion of the Defendants' actions and the subsequent damages took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Tower Semiconductor common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant Tower Semiconductor is a company incorporated under the laws of Israel and headquartered in Migdal Haemek, Israel. Defendant Tower Semiconductor is an independent specialty foundry dedicated to the manufacturing of semiconductors and operates a semiconductor fabrication facility in Newport Beach, California. Its common stock trades on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "TSEM."

8. Defendant Russell C. Ellwanger ("Ellwanger") has served as the Company's Chief Executive Officer and Director throughout the Class Period.

9. Defendant Oren Shirazi ("Shirazi") has served as the Company's Chief Financial Officer and Senior Vice President of Finance throughout the Class Period.

10. The defendants referenced above in ¶¶ 8 – 9 are sometimes referred to herein as the "Individual Defendants."

11. Defendant Tower Semiconductor and the Individual Defendants are referred to herein, collectively, as the "Defendants."

12. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f) approved or ratified these statements in violation of the federal securities laws.

13. As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and was traded on NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

14. Tower Semiconductor is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Tower Semiconductor under respondeat superior and agency principles.

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

16. The Company is an independent semiconductor foundry, which manufactures analog intensive mixed-signal semiconductor devices in the United States, Asia, and Europe.

17. In October 2010, Tower Semiconductor raised an aggregate principal amount of approximately $100 million through the issuance of long-term debentures ("Series F Debentures"), due in two equal installments in December 2015 and December 2016.

18. The Series F Debentures carry an interest rate of 7.8 percent per annum payable semiannually in Israeli New Sheqels ("NIS") but are fully linked to the US dollar. The Series F Debentures are convertible into Tower Semiconductor's ordinary shares during the period commencing in September 2012 and ending in December 2016, with a conversion price that shall be equal to 120% of the average trading price of Tower Semiconductor's ordinary shares on the Tel-Aviv Stock Exchange during the 15 trading days before September 18, 2012, provided that in no event will the price be more than NIS 6.5, and not less than NIS 1.0.

19. In June 2011, the Company acquired the fabrication facility in Nishiwaki City, Hyogo, Japan owned by a wholly-owned Japanese subsidiary of Micron Technology Inc. ("Micron") for $63.63 million—$40 million in cash and $22.63 million in the issuance of 19.7 million ordinary shares of Tower Semiconductor. The Company operates this facility through its wholly-owned Japanese subsidiary, TowerJazz Japan Ltd. ("TJP").

20. In February 2012, Tower Semiconductor raised approximately $80 million through the expansion of its long-term outstanding Series F Debentures.

21. In March 2014, the Company acquired a 51% equity stake in TowerJazz Panasonic Semiconductor Co., Ltd. ("TPSCo"), which was formed by Panasonic Corporation ("Panasonic") to manufacture products for Panasonic and potentially other third parties, using Panasonic's three semiconductor manufacturing facilities located in Hokuriku, Japan for 870,454 of the Company's ordinary shares valued at approximately $7.4 million.

22. In 2014, the operations of TJP in the Nishiwaki facility ceased in the course of a restructuring of the Company's activities and business in Japan.

**Materially False And Misleading Statements**

23. The Class Period begins on April 30, 2012, when the Company filed its annual report on Form 20-F for the year ending December 31, 2011 (the "2011 20-F") with the SEC, which contained the Company's financial results for the year ending December 31, 2011. The 2011 20-F was signed by Defendant Ellwanger. The 2011 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Ellwanger and Shirazi attesting to the accuracy of financial reporting.

24. The 2011 20-F stated the following with regards to the acquisition of TJP:

> Acquisition of TJP
>
> The fair value of the consideration the Company paid for TJP was $62.6 million, of which $40 million was paid in cash and $22.6 million was paid through the issuance to Micron of approximately 19.7 million ordinary shares of Tower. The costs incurred in connection with the acquisition were $1.5 million and are included in operating expenses.

The purchase price has been allocated on the basis of the estimated fair value of the assets purchased and the liabilities assumed. The estimated fair value of the assets, net amounted to $82 million. As the purchase price was less than the fair value of net assets, the Company recognized a gross gain on the acquisition of $19.5 million.

Net profit for the year ended December 31, 2011 includes approximately $10.1 million net positive effect from the acquisition, comprised of (i) approximately $19.5 million gross gain from the acquisition, and (ii) approximately $9.4 million of related tax provisions and other expenses directly associated with this acquisition.

The Company believes that the lower than fair asset value paid by for TJP and the resultant gain realized from the acquisition derived from (i) declining forecast and weakening demand for products currently manufactured by TJP, (ii) the fact that an acquisition of a fab as a whole is less costly than acquiring each fab component separately, (iii) limited opportunities to sell a fab while maintaining the employment level, and (iv) the natural disasters in Japan which occurred in March 2011.

The allocation of fair value to the assets acquired and liabilities assumed is as follows (in thousands):

| | As of June 3, 2011 |
|---|---|
| Current assets | $ 25,783 |
| Property, plant, and equipment, including real estate | 145,559 |
| Intangible assets | 11,156 |
| Other assets | 2,900 |
| Total assets as of acquisition date | 185,398 |
| | |
| Current liabilities | 28,317 |
| Long-term liabilities (mainly employees related termination benefits) | 74,984 |

| | |
|---|---|
| Total liabilities as of acquisition date | 103,301 |
| Net assets as of acquisition date | $ 82,097 |

The fair values set forth above are based on a valuation of TJP assets and liabilities performed by third party professional valuation experts hired to appraise the fair value of the assets in accordance with ASC 805-"Business Combinations".

In addition, as part of said acquisition, TJP entered into a supply agreement with Micron. In accordance with this agreement, TJP will manufacture products for Micron at the Nishiwaki facility for at least three years with process technologies licensed from Micron under a technology licensing agreement signed between the companies at the closing of the acquisition. Under the supply agreement Micron is committed to purchase certain minimum volumes, with periodic downward scaling of quantities, until the end of the second quarter of 2014. The companies also agreed to provide each other with transition services required for the duration of the transition period of approximately two to three years.

In order to ensure continued supply of wafers to Micron, Tower and Micron also executed a credit support agreement pursuant to which Tower and TJP, are subject to certain covenants and other protections until June 2013.

Tower's ordinary shares issued to Micron are subject to lock-up arrangement with releases of 25% of the shares every six months ending on June 2013.

For further details regarding the acquisition of TJP, see Note 3 to the annual consolidated financial statements for the year ended December 31, 2011.

25. On April 30, 2013, the Company filed its annual report on Form 20-F for the year ending December 31, 2012 (the "2012 20-F") with the SEC, which contained the Company's financial results for the year ending December 31, 2012. The 2012 20-F

was signed by Defendant Ellwanger. The 2012 20-F contained signed SOX certifications by Defendant Ellwanger and Shirazi attesting to the accuracy of financial reporting.

26. The 2012 20-F stated the following with regards to the acquisition of TJP:

> Acquisition of TJP
>
> The fair value of the consideration the Company paid for TJP was $62.6 million, of which $40 million was paid in cash and $22.6 million was paid through the issuance to Micron of approximately 1.3 million ordinary shares of Tower. The costs incurred in connection with the acquisition were $1.5 million and are included in operating expenses.
>
> The purchase price has been allocated on the basis of the estimated fair value of the assets purchased and the liabilities assumed. The estimated fair value of the assets, net amounted to $82 million. As the purchase price was less than the fair value of the net assets, the Company recognized a gross gain on the acquisition of $19.5 million.
>
> Net profit for the year ended December 31, 2011, includes approximately $10.1 million net positive effect from the acquisition, comprised of (i) approximately $19.5 million gross gain from the acquisition, and (ii) approximately $9.4 million of related tax provisions and other expenses directly associated with this acquisition.
>
> The Company believes that the lower than fair asset value paid by the Company for TJP and the resultant gain realized from the acquisition derived from (i) declining forecast and weakening demand for products currently manufactured by TJP, (ii) the fact that an acquisition of a fab as a whole is less costly than acquiring each fab component separately, (iii) limited opportunities to sell a fab while maintaining the employment level, and (iv) the natural disasters in Japan which occurred in March 2011.

The allocation of fair value to the assets acquired and liabilities assumed is as follows in thousands):

| | | As of June 3, 2011 |
|---|---|---|
| Current assets | $ | 25,783 |
| Property, plant, and equipment, including real estate | | 145,559 |
| Intangible assets | | 11,156 |
| Other assets | | 2,900 |
| Total assets as of acquisition date | | 185,398 |
| | | |
| Current liabilities | | 28,317 |
| | | |
| Long-term liabilities (mainly employees related termination benefits) | | 74,984 |
| Total liabilities as of acquisition date | | 103,301 |
| Net assets as of acquisition date | $ | 82,097 |

The fair values set forth above are based on a valuation of TJP assets and liabilities performed by third party professional valuation experts hired to appraise the fair value of the assets in accordance with ASC 805-“Business Combinations”.

In addition, as part of said acquisition, TJP entered into a supply agreement with Micron. In accordance with this agreement, TJP will manufacture products for Micron at the Nishiwaki facility for at least three years with process technologies licensed from Micron under a technology licensing agreement signed between the companies at the closing of the acquisition. Under the supply agreement, Micron is committed to purchase certain minimum volumes, with periodic downward scaling of quantities, until the end of the second quarter of 2014 with a take-or-pay provision. The companies also agreed to provide each other with transition services required for the duration of the transition period of approximately two to three years.

In order to ensure continued supply of wafers to Micron, Tower and Micron also executed a credit support agreement pursuant

> to which Tower and TJP, are subject to certain covenants and other undertakings until June 2013.
>
> Tower's ordinary shares issued to Micron are subject to a lock-up arrangement with releases of 25% of the shares every six months ending in June 2013.
>
> For further details regarding the acquisition of TJP, see Note 3 to the annual consolidated financial statements for the year ended December 31, 2012.

27. The 2012 20-F stated the following with regards the debt maturity of the Series F Debentures:

> NOTE 13 - DEBENTURES
>
> A. Composition by repayment schedule (carrying amount):

| | Interest rate | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|
| Debentures Series D | 8% | $ 5,823 | $ 5,823 | $ 5,823 | $ 5,823 |
| Debentures Series F | 7.8% | -- | -- | 50,954 | 50,954 |
| Jazz's New Notes (as defined in G below) | 8% | -- | -- | 74,585 | -- |
| | | $ 5,823 | $ 5,823 | $131,362 | $ 56,777 |

> The outstanding principal amounts of Tower debentures as of December 31, 2012 and 2011 were $255,879 and $177,249, respectively.

28. On May 14, 2014, the Company filed its annual report on Form 20-F for the year ending December 31, 2013 (the "2013 20-F") with the SEC, which contained the Company's financial results for the year ending December 31, 2013. The 2013 20-F was

signed by Defendant Ellwanger. The 2013 20-F contained signed SOX certifications by Defendant Ellwanger and Shirazi attesting to the accuracy of financial reporting.

29. The 2013 20-F stated the following with regards to the acquisition of TJP:

> NOTE 3 - ACQUISITION OF NISHIWAKI FAB IN JAPAN
>
> On June 3, 2011, the Company acquired the fabrication facility in Nishiwaki City, Hyogo, Japan owned by a wholly owned Japanese subsidiary of Micron Technology Inc. ("Micron"). The acquisition was effected through a new wholly owned Japanese subsidiary of the Company, which acquired the shares of and subsequently merged with Micron's Japanese subsidiary that held the assets of the fabrication facility and related business. The merged entity is named TowerJazz Japan Ltd. ("TJP").
>
> The fair value of the consideration the Company paid was $62,630, of which $40,000 was paid in cash and $22,630 was paid through the issuance to Micron of 1.3 million ordinary shares of Tower. The costs incurred in connection with the acquisition were $1,493 and are included in operating expenses.
>
> The purchase price has been allocated on the basis of the estimated fair value of the assets purchased and the liabilities assumed. The estimated fair value of the assets, net amounted to $82,097. As the purchase price was less than the fair value of net assets, the Company recognized a gross gain on the acquisition of $19,467.
>
> Net profit for the year ended December 31, 2011 includes $10,078 net positive effect from the acquisition, comprised of (i) $19,467 gross gain from the acquisition, and (ii) $9,389 of related tax provisions and other expenses directly associated with this acquisition.
>
> The Company believes that the gain realized from the acquisition derived from (i) declining forecast and weakening demand for products manufactured by TJP, (ii) the fact that an

acquisition of a fab as a whole is less costly than acquiring each fab component separately, (iii) limited opportunities to sell a fab while maintaining the employment level, and (iv) the natural disasters in Japan which occurred in March 2011.

The allocation of fair value to the assets acquired and liabilities assumed is as follows:

| | As of June 3, 2011 |
|---|---|
| Current assets | $ 25,783 |
| Property, plant, and equipment, including real estate | 145,559 |
| Intangible assets | 11,156 |
| Other assets | 2,900 |
| Total assets as of acquisition date | 185,398 |
| | |
| Current liabilities | 28,317 |
| Long-term liabilities (mainly employees related termination benefits) | 74,984 |
| Total liabilities as of acquisition date | 103,301 |
| Net assets as of acquisition date | $ 82,097 |

The fair values set forth above are based on a valuation of TJP assets and liabilities performed by third party professional valuation experts hired by the Company to appraise the fair value of the assets in accordance with ASC 805 - "Business Combinations".

30. The 2013 20-F stated the following with regards the debt maturity of the Series F Debentures:

NOTE 13 - DEBENTURES

A. Composition by repayment schedule (carrying amount):

| | As of December 31, 2013 | | | |
|---|---|---|---|---|
| | Interest rate | 2014 | 2015 | 2016 |
| Debentures Series D | 8% | $6,441 | $ 6,441 | $ 6,441 |
| Debentures Series F | 7.8% | -- | 57,041 | 57,041 |
| Jazz's 2010 Notes (as defined in D below) | 8% | -- | 81,181 | -- |
| | | $6,441 | $144,663 | $63,482 |

The outstanding principal amounts of the debentures as of December 31, 2013 and 2012 were, approximately $345,000 and $349,000, respectively.

The Tower debentures and interest thereon are unsecured and subordinated to Tower's existing and future secured indebtedness, including indebtedness to the Israeli Banks under the Facility Agreement - see Note 16A(1), and to the government of Israel - see Note 8B. For details in regards to Jazz Notes, see D below.

If on a payment date of the principal or interest on any series of the Tower debentures, there is a breach of certain covenants and conditions under the Facility Agreement, the dates for payment of interest and principal on the debentures may be postponed until such covenant or condition is satisfied.

31. On May 14, 2015, the Company filed its annual report on Form 20-F for the year ending December 31, 2014 (the "2014 20-F") with the SEC, which contained the Company's financial results for the year ending December 31, 2014. The 2014 20-F was signed by Defendant Ellwanger. The 2014 20-F contained signed SOX certifications by Defendant Ellwanger and Shirazi attesting to the accuracy of financial reporting.

32. The 2014 20-F stated the following with regards to the acquisition of TPSCo:

> NOTE 3 - TOWERJAZZ PANASONIC SEMICONDUCTOR CO., LTD. ESTABLISHMENT
>
> Pursuant to agreements signed between Panasonic Corporation ("Panasonic") and Tower, Panasonic formed a fully-owned subsidiary named TPSCo in March 2014. Further to said agreements, (a) Panasonic transferred licenses use rights of its semiconductor wafer manufacturing process and transferred its capacity tools of 8 inch and 12 inch at three of its fabs located in Hokuriku Japan (Uozu, Tonami and Arai) to TPSCo; and (b) Tower acquired 51% of the shares of TPSCo in consideration for the issuance of ordinary shares of Tower to Panasonic valued at approximately $7,411.
>
> The purchase price has been allocated on the basis of the estimated fair value of the assets purchased and the liabilities assumed. The estimated fair value of the assets, net amounted to $180,935. As the fair value of the net assets acquired less the non-controlling interest exceeded the purchase price, Tower recognized a gain on the acquisition in the amount of $166,404.
>
> The Company believes that the gain realized from the acquisition mainly derived from the fact that Panasonic's fabs were not fully utilized in recent years and were anticipated to remain so in the coming years, hence any volume manufacturing and revenue resulting from the transaction with Tower, due to Tower's customer base, contacts, technologies and foundry management and operations expertise will benefit Panasonic and directly increase the value of the transferred assets.
>
> The allocation of fair value to the assets acquired and liabilities assumed is as follows:

| | As of March 31, 2014 |
|---|---|
| Current assets | $ 91,414 |
| Machinery and equipment | 245,278 |
| Intangible assets | 24,520 |
| Total assets as of acquisition date | $ 361,212 |
| | |
| Current liabilities | $ 1,426 |
| Long-term Loan | 85,249 |
| Deferred tax liability | 93,602 |
| Total liabilities as of acquisition date | $ 180,277 |
| | |
| Total net assets acquired | $ 180,935 |
| The fair value non-controlling interests in TPSCo | 7,120 |
| Tower's consideration | 7,411 |
| Gain on acquisition | $ 166,404 |

The fair value of the non-controlling interest in the table above was derived based on the purchase price paid by Tower to Panasonic in consideration for the acquisition of 51% of TPSCo's shares.

The fair values set forth above are based on a valuation of TPSCo's assets and liabilities performed by third party professional valuation experts hired by the Company to appraise the fair value of the assets in accordance with ASC 805-10 "Business Combinations".

TPSCo, Tower and Panasonic also agreed to the following, among others: (i) a five-year manufacturing agreement between Panasonic and TPSCo, under which Panasonic will acquire products from TPSCo; (ii) a five-year production related and complimentary services agreement between Panasonic and TPSCo, under which Panasonic will acquire services from TPSCo; (iii) TPSCo will license certain technologies from Panasonic in order to utilize certain Panasonic process

technologies for the manufacturing of products; (iv) Panasonic will provide TPSCo with various transition services and support; (v) TPSCo will lease the manufacturing buildings and related facilities infrastructure from Panasonic; and (iv) TPSCo will receive services from Tower including marketing, sales, general and administration services.

Pro forma financial information is not presented since the financial information of the acquire was prepared for internal use within its group and is not representative of the financial statements of the acquire had it been standalone entity.

33. The 2014 20-F stated the following with regards the debt maturity of the Series F Debentures:

NOTE 13 - DEBENTURES

A. Composition by repayment schedule (carrying amount):

| | As of December 31, 2014 | | | | |
|---|---|---|---|---|---|
| | Interest rate | 2015 | 2016 | 2017 | 2018 |
| Debentures Series D | 8% | $ 5,796 | $ 5,796 | $ -- | $ -- |
| Debentures Series F | 7.8% | 58,626 | 58,626 | -- | -- |
| Jazz's 2010 Notes (as defined in D below) | 8% | 45,577 | -- | -- | -- |
| Jazz's 2014 Notes (as defined in E below) | 8% | -- | -- | -- | 42,889 |
| | | $109,999 | $64,422 | $ -- | 42,889 $ |

The outstanding principal amounts of the debentures as of December 31, 2014 and 2013 were approximately $312,000 and $345,000, respectively, and following redemption of Jazz 2010 Notes described in D below and conversions of Series F described in C below, the outstanding principal amounts of all

> the company's debentures has been reduced to approximately $208,000 as of February 15, 2015.
>
> Tower debentures and interest thereon are unsecured and subordinated to Tower's existing and future secured indebtedness, including indebtedness to the Israeli Banks under the Facility Agreement, see Note 16A(1), and to the government of Israel, see Note 8B. For details in regards to Jazz Notes, see E below.
>
> If on a payment date of the principal or interest on any series of the Tower debentures, there is a breach of certain covenants and conditions under the Facility Agreement, the dates for payment of interest and principal on the debentures may be postponed until such covenant or condition is satisfied.

34. The statements referenced in ¶¶ 23 – 33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the value of net tangible assets of the acquisition of TJP from Micron was artificially inflated; (2) the value of net tangible assets of the acquisition of 51% of TPSCo from Panasonic was artificially inflated; (3) the Series F Debentures were incorrectly accounted for to understate debt; and (4) as a result, Defendants' statements about Tower Semiconductor's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

35. On January 14, 2016, analyst firm Spruce Point Capital Management issued a report about the Company asserting, among other things, that: (1) the value of net tangible assets of the acquisition of TJP appears artificially inflated to $82 million; (2) the value of net tangible assets of the acquisition of 51% in TPSCo was artificially inflated to $181 million; (3) the Company's improper accounting treatment for the Series F Debentures resulted in its equity being inflated by approximately $50 million as of the third quarter of 2012.

36. On this news, share of Tower Semiconductor fell $1.23 per share or approximately 10% to close at $11.24 per share on January 14, 2016, damaging investors.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tower Semiconductor securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the

Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tower Semiconductor securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tower Semiconductor or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tower Semiconductor;
- whether the Individual Defendants caused Tower Semiconductor to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Tower Semiconductor securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Tower Semiconductor securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Tower Semiconductor securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants

omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**<u>COUNT I</u>**

**Violations of Section 10(b) of The Exchange Act and Rule 10b-5**
**<u>Against All Defendants</u>**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i)

deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tower Semiconductor securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tower Semiconductor securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Tower Semiconductor securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Tower Semiconductor' disclosure controls and procedures.

51. By virtue of their positions at Tower Semiconductor, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily

available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Tower Semiconductor, the Individual Defendants had knowledge of the details of Tower Semiconductor' internal affairs.

53. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Tower Semiconductor. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Tower Semiconductor' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Tower Semiconductor securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Tower Semiconductor' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tower Semiconductor securities

at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

54. During the Class Period, Tower Semiconductor securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tower Semiconductor securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Tower Semiconductor securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.

55. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period,

upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act Against The Individual Defendants

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. During the Class Period, the Individual Defendants participated in the operation and management of Tower Semiconductor, and conducted and participated, directly and indirectly, in the conduct of Tower Semiconductor's business affairs. Because of their senior positions, they knew the adverse non-public information about Tower Semiconductor' operations, current financial position and future business prospects.

59. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tower Semiconductor' business practices, and to correct promptly any public statements issued by Tower Semiconductor which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tower Semiconductor disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and

procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tower Semiconductor to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tower Semiconductor within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tower Semiconductor securities.

61. Each of the Individual Defendants, therefore, acted as a controlling person of Tower Semiconductor. By reason of their senior management positions and/or being directors of Tower Semiconductor, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Tower Semiconductor to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Tower Semiconductor and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tower Semiconductor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: January 27, 2016

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:(212) 661-8665

E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***